**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:22-cv-02431-JMG |
| | : | |
| GLENN MCGOGNEY, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GALLAGHER, J.                                          **July 31, 2024**

## I.      INTRODUCTION

The underlying facts of this cause of action concern Plaintiff insurer's obligation to defend and indemnify its insureds under lawyers professional liability insurance policies. Plaintiff Westport Insurance Corporation ("Westport") issued two such policies to Defendant Barr & McGogney ("B&M"), forming the basis for this declaratory action. Specifically, Westport seeks relief from its obligation to indemnify Defendant Glenn McGogney ("McGogney") for a judgment rendered against him in an underlying professional negligence lawsuit (the "Lehigh County Lawsuit").[1] McGogney was sued due to his role in a failed business venture with a former client. Westport denied coverage primarily because McGogney did not report the claim within the required policy period. McGogney is the sole remaining defendant in this case and has not

---

[1] Westport's Complaint also seeks determinations that Westport does not owe coverage for a second underlying lawsuit (the "Bucks County Lawsuit"), *see* Pl's. Compl. ¶¶ 106-13, ECF No. 1, and that it does not have a duty to defend Gerald Barr under a separate lawyers professional liability policy exclusive to him. *See id.* ¶¶ 114-36. However, due to a settlement agreement between Westport, Sibley, Barr, and B&M, Westport has asked this Court to disregard all claims except its request for a declaratory judgment that it does not have a duty to defend or indemnify McGogney for the Lehigh County Lawsuit. *See* Pl's. Mot. for Default J. at 1, ECF No. 53.

defended or responded to Westport's Complaint, resulting in a default entered against him by the Clerk on October 14, 2022. Presently before the Court is Westport's Motion for Default Judgment. For the reasons outlined below, the motion is granted.

## II.     FACTUAL BACKGROUND

### A.     The Lawyers Professional Liability Insurance Policies Issued to B&M

Westport issued two separate lawyers professional liability insurance policies (the "Policies") to B&M for the periods of July 11, 2009, to July 11, 2010, (the "2009-10 Policy") and July 11, 2010, to July 11, 2011, (the "2010-11 Policy"). *See* Certified Pol'y Copy Ex. A, ECF No. 1-1 at 2; Certified Pol'y Copy Ex. B, ECF No. 1-1 at 42. For coverage to apply, claims must be made *and* reported within a single policy period. This stipulation is clearly stated in bold letters within each policy's "Declarations" page:

> **NOTICE: This is a Claims-Made and Reported POLICY. Except as may be otherwise provided herein, this coverage is limited to liability for only those CLAIMS which are first made against the NAMED INSURED and reported to the Company while the POLICY is in force.**

ECF No. 1-1 at 6, 46. The "Claims-made and Reported" condition is reiterated in the "REPORTING AND NOTICE" section, specifying that coverage only applies to claims[2] first made and reported to Westport within sixty days of the policy's termination:

> As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after the termination of the POLICY PERIOD, provide written notice to the Company.

---

[2] The Policies define "CLAIM" as "a demand made upon any INSURED for LOSS, as defined in each of the attached COVERAGE UNITS, including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED." *See* ECF No. 1-1 at 16, 56.

2

*Id.* at 20, 68. The policies also list several types of claims excluded from coverage. Westport has highlighted two exclusions it considers relevant to the underlying action:

> [T]his COVERAGE UNIT shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
> . . . .
> C. any INSURED'S activities as an officer, director, partner, manager or employee of any company corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM, except as a member, director or officer of any Bar Association, its governing board or any of its committees, or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law;
> . . . .
> J. any professional services rendered or that should have been rendered to or on behalf of any entity which, at that time, was controlled, managed or operated by any INSURED or was ten percent (10%) or more owned by any INSURED or combination of INSUREDs.

*Id.* at 21-22, 61-62.

### B.    Westport's Denial of Coverage for the Lehigh County Lawsuit

On April 2, 2010, the underlying plaintiff, John Sibley ("Sibley"), initiated the Lehigh County Lawsuit through a writ of summons filed in the Philadelphia County Court of Common Pleas naming McGogney and a second defendant. *See* Civ. Docket Report, Ex. D, ECF No. 1-1 at 120-21. McGogney was served with the writ on May 11, 2010 and entered his appearance on June 25, 2010. *See* Civ. Docket Report Ex. 3, ECF No. 53-4 at 4-5. The following day, Sibley filed a complaint alleging, *inter alia*, professional negligence. *See* Civ. A. Compl. ¶¶ 41-49 Ex. E, ECF No. 1-1 at 128-129.

McGogney purportedly represented Sibley as his attorney between 2001 and 2005. *Id.* ¶ 6. However, the Lehigh County Lawsuit allegedly arose from a commercial venture between Sibley,

McGogney, and a second underlying defendant. *See Id.* ¶¶ 11-12. According to the underlying complaint, in 2007, McGogney approached Sibley with a business proposal to open a sports bar and gentlemen's club. *Id.* ¶¶ 11-12. Sibley said he believed McGogney acted as his attorney during the preliminary discussions and Sibley invested substantial funds into the new business. *Id.* ¶¶ 14, 22. Sibley also claimed that McGogney and the other defendant persuaded him to quit his job by promising a salary and benefits he had never received. *Id.* ¶¶ 30, 36-37.

On October 6, 2010, Sibley's attorney sent a letter to Westport, attaching the underlying complaint. *See* Letter from Weisberg Law, P.C., to USI Affinity - Westport, C/o Claims Adjuster (Oct. 06, 2010) Ex. H, ECF No. 1-1 at 153-162. On October 11, 2010, McGogney also sent Westport a letter stating:

> Please be advised that Sibley is a disgruntled ex-business partner and that his suit does not involve legal malpractice. I am not requesting coverage in this matter and request that you issue a denial letter.

Letter from McGogney, B&M, to USI Affinity - Westport (Oct. 11, 2010) Ex. I, ECF No. 1-1 at 164. Westport asserts that because both Sibley's attorney and McGogney sent the letters to the wrong address, it did not receive notice of Sibley's claim against McGogney until June 16, 2011.[3] *See* ECF No. 1 ¶¶ 44-45.

On July 6, 2011, Westport sent a letter to McGogney denying coverage for the Lehigh County Lawsuit because it was a claim not made and reported to Westport within the required period. The letter stated:

> This is a ***Claims Made and Reported policy,*** requiring that the claim

---

[3] Both letters were sent to "USI Affinity – Westport 1 International Plaza, Suite 400 Philadelphia, PA C/o Claims Adjuster." *See* Ex. H. However, the Policies state that notice must sent in writing to "Westport Insurance Corporation, 222 West Adams, Suite 2300, Chicago, Illinois 60606." *See* ECF No. 1 ¶¶ 44-45; ECF No. 1-1 at 5, 45.

> be first made during the policy period and reported to us within the same policy period in which the claim is first made, but no later than 60 days after the expiration of the policy period in which the claim was first made. This claim was first made when you were served with the Writ of Summons on May 11, 2010, and not reported until October 11, 2010. Accordingly, this claim does not meet the insuring Agreement necessary for coverage because it was first made during the prior policy period of July 11, 2009 - July 11, 2010 and reported beyond 60 days after the expiration of the prior policy period. Therefore, we regret to inform you that neither defense nor indemnity coverage is available for this claim.

Letter from Carman, AVP Pro. Advisers Claims, Westport Ins. Corp., to McGogney, B&M (July 6, 2011) Ex. J, ECF No. 1-1 at 168-69. The letter also explained that the claim was precluded from coverage insofar as it arose from a business venture unrelated to McGogney's legal services at B&M. *Id.* at 169.

On May 30, 2014, Arbitrator Phillip H. Hof found in favor of Sibley and against McGogney for professional negligence, entering a judgment of $380,147.26.[4] *See* Decision & Award of Arbitrator Ex. F at 2, ECF No. 1-1 at 133. On June 16, 2015, a Lehigh County Judge confirmed the judgment and award. *See* Order Affirming Ex. G, ECF No. 1-1 at 142. Westport now seeks declaratory relief from its duty to indemnify McGogney for the judgment.

## III.     STANDARD OF REVIEW

### A.     Default Judgment

A district court may "enter default judgment against a party when a default has been entered by the Clerk of Court." *Am. W. Home Ins. Co. v. Salamander Stucco, LLC*, No. 5:21-CV-03490, 2022 WL 2240036, at *2 (E.D. Pa. June 22, 2022) (citing Fed. R. Civ. P. 55(b)(2)). The decision

---

[4] The Arbitrator found that Sibley believed as a former legal advisor, McGogney continued "to act in a fiduciary capacity" during the venture and should have known that Sibley was relying on McGogney to inform him of critical details and risks associated with mortgaging real estate for a sports bar and gentlemen's club investment. *See* ECF No. 1-1 at 133.

to enter a default judgment is "left primarily to the discretion of the district court." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Before granting a default judgment motion, the court must confirm it has personal and subject-matter jurisdiction, that service of process was proper, and that "the complaint establishes a legitimate cause of action against the defendant." *Rios v. Marv Loves 1*, No. 13-cv-1619, 2015 WL 5161314 at *8 (E.D. Pa. Sept. 2, 2015).

Additionally, the Third Circuit has instructed district courts to consider the following factors to determine whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether [the] defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 165 (3d Cir. 2000).

### B.    Declaratory Judgment

The Declaratory Judgment Act allows federal courts to "declare rights and other legal relations of any interested party in case[s] of actual controversy within [the] court's jurisdiction." *See* 28 U.S.C. § 2201(a). A "case-or-controversy" exists where there is a "substantial controversy, between parties having adverse legal interests" that is immediate and real enough to justify a declaratory judgment. *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007). The decision to exercise declaratory authority is left to the Court's discretion. *See Main St. Am. Assurance Co. v. United Insulation Servs., Inc.*, No. 20-3430, 2022 WL 970841, at *5 (E.D. Pa. Mar. 31, 2022) (citations omitted). Still, "the 'wholesale' dismissal of certain types of cases brought under the DJA is improper, as litigants should not be unjustifiably denied the right to obtain an authorized remedy in federal court." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017).

Before exercising declaratory judgment authority, a district court must first determine

whether a "parallel state proceeding" exists. *Id.* (internal quotation marks omitted) (citing *Reifer*, 751 F.3d at 143, 146). The absence of such a proceeding strongly favors exercising declaratory authority. *Id.* Proceedings are considered parallel "if they involve substantially similar parties and issues." *Main St. Am. Assurance Co.*, 2022 WL 970841, at *5 (citing *Kelly*, 868 F.3d at 284, 286).

There is no parallel state proceeding to the instant action. Westport is not a party in the underlying lawsuit. *See Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 136 (E.D. Pa. 2022) (finding that since the insurance company was "not a party to the [underlying] action, it cannot constitute a parallel state proceeding") (citations omitted). Furthermore, the resolution in the Lehigh County Lawsuit does not address whether Westport must indemnify McGogney for the judgment. Thus, the Court will exercise declaratory judgment authority. *See Kelly*, 868 F.3d at 284 n.8 (explaining that parallel state proceedings are often identifiable where "the resolution of an issue in one [proceeding] will necessarily settle the matter in the other") (citations omitted); *Gutowski*, 644 F. Supp. 3d at 136 (stating that because there was "no indication that the ultimate resolution of the [underlying] action would resolve the issue of whether [the insurer] is obligated to defend and indemnify [the insured] in that case, this weighs in favor of determining that the [underlying] action is not a parallel state proceeding").

## IV.    ANALYSIS

### A.    Jurisdiction and Service

The Court has diversity jurisdiction under 28 U.S.C. § 1332. Westport is a citizen of Missouri, while McGogney is a citizen of Pennsylvania.[5] Thus, complete diversity exists. *See Wilmington Sav. Fund Soc'y, FSB v. Harvin*, 680 F. App'x 144, 145 (3d Cir. 2017) ("'[C]omplete

---

[5] Westport is incorporated in Missouri, with its principal place of business being in Kansas City, Missouri. *See* ECF No. 1 ¶ 2. At least two of Mcgogney's law offices were located in Lehigh County. *See* ECF No. 1-1 at 164.

diversity' exists if the two parties are not citizens of the same state."). Additionally, because the judgment awarded in the Lehigh County Lawsuit exceeds $75,000, the amount in controversy requirement is satisfied. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397 (3d Cir. 2016) ("Although declaratory judgment actions do not directly involve the award of monetary damages, 'it is well established that the amount in controversy [in such actions] is measured by the value of the object of the litigation.'") (alteration in original) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)); *Gutowski*, 644 F. Supp. 3d at 134 (finding the amount in controversy requirement satisfied in a declaratory judgment action due to the value of the pending underlying litigation).

Furthermore, service of process was proper. The Federal Rules of Civil Procedure permit service by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(B). Here, McGogney was personally served with Westport's Complaint while incarcerated at SCI Camp Hill, in Camp Hill, Pennsylvania, on July 29, 2022.[6] *See* Aff. of Service as to B&M ¶ 3, ECF No. 19 at 4.

Before his incarceration, McGogney lived and practiced law in Lehigh County, Pennsylvania.[7] Accordingly, the Court also has general jurisdiction over him. *See Keys v. Dep't of Just.*, 288 F. App'x 863, 866 (3d Cir. 2008) ("Prisoners . . . generally are deemed to be residents, not of their place of incarceration, but of their place of domicile immediately before their

---

[6] The Sheriff's Return of Service shows that McGogney was personally handed Westport's Complaint while incarcerated at SCI Camp Hill at 2560 Lisburn Road, Lower Allen Township, Camp Hill, Pennsylvania, on July 29, 2022, at 04:09 PM by Cumberland County Sheriff's Deputy Brady Morris. *See* ECF No. 19 at 4.

[7] B&M's offices are located at 2239 PA Route 309, Orefield, PA 18069, *see* ECF No. 1-1 at 164, and 4905 Tilghman Street Suite 250, Allentown, PA 1804. *Id.* at 3. McGogney's most recent address prior to his incarceration appears to also have been in Orefield, Pennsylvania. *See id.* at 188, 311, 344.

incarceration.").

### B.      Servicemembers Civil Relief Act and Rule 55 Competency

Under the Servicemembers Civil Relief Act, a plaintiff seeking a default judgment must file an affidavit confirming whether the defendant is in military service, *see* 50 U.S.C. § 3931(b)(1)(A), and describe the "efforts exerted to determine the defendant's military status," *House v. Smith*, No. 2:18-CV-04283, 2020 WL 5118047, at *2 (E.D. Pa. Aug. 31, 2020) (quotations and citations omitted). A plaintiff may meet this requirement through a written statement, declaration, verification, or certificate, which is certified under penalty of perjury. *See* 50 U.S.C. § 3931(b)(4). Additionally, Rule 55 prohibits default judgment entered against an incompetent person. *See* Fed. R. Civ. P. 55(b)(2).

The Court finds these requirements satisfied. Westport filed an affidavit showing the efforts to verify that McGogney is not an active servicemember.[8] *See* Aff. Non-Military Serv. ¶ 2 Ex. 1, ECF No. 53-2 at 2, 4. Additionally, Westport submitted an affidavit indicating that McGogney is a competent adult. *See* R. 55 Aff. ¶¶ 2-3 Ex. 2, ECF No. 53-3 at 2.

### C.      Cause of Action

Next, the Court must determine whether the undisputed facts in Westport's complaint establish a "legitimate cause of action." *Rios*, 2015 WL 5161314, at *8. For this analysis, the Court "accepts as true the well-pleaded factual allegations in the plaintiff's complaint." *State Farm Fire & Cas. Co. v. Hunt*, No. CIV. A. 14-6673, 2015 WL 1974772, at *3 (E.D. Pa. May 4, 2015).

Taking the facts in the instant Complaint as true, Westport has established a legitimate

---

[8] Westport's attorney entered McGogney's name and date of birth into the Department of Defense Manpower Data Center (DDMDC) database to verify his military status. The database indicates no record of McGogney being a current or past servicemember. *See* Status Report Pursuant to Servicemembers Civil Relief Act Ex. A, ECF No. 53-2 at 4. Additionally, Westport notes that McGogney is a seventy-seven-year-old former attorney, making his being an active servicemember unlikely. *See* ECF No. 53 at 10.

cause of action for declaratory relief. Specifically, Westport alleges that it is not obligated to defend McGogney for the Lehigh County Lawsuit because it was a claim that was not both first made and reported within either Policy period. *See* ECF No. 1 ¶¶ 86-95.

In Pennsylvania, "the 'first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage' and then to 'examine the complaint in the underlying action to ascertain if it triggers coverage.'" *Knightbrook Ins. Co. v. DNA Ambulance, Inc*., No. CIV.A. 13-2961, 2013 WL 6662745, at *5 (E.D. Pa. Dec. 16, 2013) (quoting *Gen. Acc. Ins. Co. Of Am. v. Allen*, 692 A.2d 1089, 1095 (1997)). An insurer has a duty to defend if the underlying complaint alleges facts that "encompass an injury that is actually or potentially within the scope of the policy . . . ." *Main St. Am. Assur. Co. v. Connolly Contrs., Inc.*, 587 F. Supp. 3d 256, 267 (E.D. Pa. Feb. 28, 2022) (citations omitted). Additionally, courts must enforce a policy's language when it is "clear and unambiguous." *Id.* at 267 (citations omitted). Ambiguity exists if a policy's terms could be given "'more than one reasonable interpretation when applied to a particular set of facts.'" *Connolly Contrs. Inc.*, 587 F. Supp. 3d at 267 (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).

Here, the Policies' "claims-made and reported" language is unambiguous, and the Court will enforce it. The Policies clearly explain that written notice of claims is a "condition precedent to coverage" and must be reported to Westport "no later than sixty (60) days after the termination of the POLICY PERIOD." *See* ECF No. 1-1 at 20, 68. The policy periods are also clearly outlined from July 11, 2009, to July 11, 2010, and from July 11, 2010, to July 11, 2011. *See Id*. at 6, 46.

Because McGogney received service of the writ of summons for the Lehigh County Lawsuit on May 11, 2010, it was a claim first made during the 2009-10 policy period.[9] Accordingly, McGogney was required to report the claim to Westport no later than September 11, 2010, sixty days after the 2009-10 Policy expired. However, because Westport has sufficiently alleged that the earliest it could have received written notice of the claim was October 6, 2010, the Policies' "claims-made and reported" stipulation precludes the Lehigh County Lawsuit from coverage.[10] *See Cohen & Co., v. N. River Ins. Co.*, CIV.A. 93-1860, 1994 WL 105561, at *2 (E.D. Pa. Mar. 29, 1994), *aff'd sub nom. Cohen & Co. V. N. River Ins. Co.*, 39 F.3d 1168 (3d Cir. 1994) ("With respect to a 'claims made' policy, under Pennsylvania law an insured which fails to give notice to the insurance company in the same policy period as that in which the claim was made against the insured forfeits coverage.") (citations omitted).

### D.    The *Chamberlain Factors*

After determining that Westport has established a legitimate cause of action, the Court must consider the following *Chamberlain* factors to decide whether default judgment is appropriate.

#### 1.    Prejudice to the Plaintiff

The first factor examines whether denying default judgment would prejudice Westport. *Chamberlain*, 210 F.3d at 165. The key consideration is "whether the delay has impeded Plaintiff's ability to bring her case." *Rios*, 2015 WL 5161314 at *16. Here, Westport is prejudiced by

---

[9] *See Cohen & Co.,* 1994 WL 105561, at *2 ("Under Pennsylvania law, a writ of summons commences an action . . . [and] unambiguously conveys to the defendant that a party is making a claim against it.") (citation omitted).

[10] Westport alternatively pleads that it has no duty to defend or indemnify McGogney in the Lehigh County Lawsuit because the claim falls under the exclusionary provisions C and J of the Policies. *See* ECF No. 1 at ¶ 96. Specifically, Westport argues that the lawsuit stems from a private business venture. *Id*. at ¶¶ 97-98. Because the Court finds that the claim is excluded from coverage under the claims-made and reported stipulation, it does not address whether other exclusionary provisions apply.

McGogney's failure to respond to the instant action. Denying default judgment would further impair Westport's ability to obtain a declaration that it is not required to indemnify McGogney, since the judgment has already been awarded against McGogney in the underlying suit. *See Salamander Stucco, LLC*, 2022 WL 2240036, at *4 ("[B]ecause Defendant has completely failed to respond, Plaintiff has no way to vindicate its rights and will therefore be prejudiced if default judgment is denied."). Thus, this factor weighs in favor of default judgment.

### 2.    Whether Defendant has a Litigable Defense

The second factor assesses whether McGogney "appears to have a litigable defense." *Chamberlain*, 210 F.3d at 165. Courts look to a defendant's answer to see whether the allegations "'if established on trial would constitute a complete defense to the action.'" *Salamander Stucco*, 2022 WL 2240036, at *2 (quoting *Hritz v. Woma Corp*., 732 F.2d 1178, 1181 (3d Cir. 1984)).

Here, as McGogney has not responded to the allegations, the Court assumes he has no litigable defense. *See Gutowski*, 644 F. Supp. 3d at 131-32 ("[T]he court may presume that an absent defendant who has failed to answer has no meritorious defense, because it is not the court's responsibility to research the law and construct the parties' arguments for them."); *Wells Fargo Fin Leasing, Inc. v. Target Ad, Inc.*, No. 09-340, 2010 WL 1141332 at *1 (E.D. Pa. Mar. 24, 2010) (concluding that because the defendant failed to "submit any responsive pleadings, the court must assume it has no litigable defense").

### 3.    Defendant's Culpable Conduct

The final *Chamberlain* factor considers whether McGogney's failure to respond "is due to culpable conduct." 210 F.3d at 154, 165. The Third Circuit defined "culpable conduct" as actions that are "'taken willfully or in bad faith.'" *Chamberlain*, 210 F.3d at 164 (quoting *Gross v. Stereo Components Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983)). This is "at most a neutral factor." *See*

*Great Am. E&S Ins. Co. v. John P. Cawley, Ltd.*, 866 F. Supp. 2d 437, 442 (E.D. Pa. 2011), *J. entered sub nom. Great Am. E&S Ins. Co. v. Cawley*, No. CIV.A. 10-4853, 2011 WL 2174975 (E.D. Pa. June 3, 2011).

A failure to respond does not inherently indicate culpable conduct. *See Salamander Stucco,* 2022 WL 2240036, at *4 ("[I]n the complete absence of any contact from Defendant, the Court cannot find that Defendant is anything more than negligent.") (citations omitted)*.* The Court also lacks information about McGogney's intentions and cannot conclude that he has willfully decided to ignore the present action. *See Great Am. E&S Ins. Co.*, 866 F. Supp. 2d at 442 ("The Court has no information related to the motivations of [the defendants] in failing to appear and defend."). Still, a default judgment may be warranted if other factors strongly favor it. *See Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. 22-1809, 2023 U.S. App. LEXIS 17434, at *8 n.8 (3d Cir. 2023) ("A district court need not find that all three factors are satisfied to enter default judgment.").

Here, McGogney's failure to respond to this action has prejudiced and continues to prejudice Westport and has prevented this Court from determining whether he has a litigable defense. Default judgment is therefore appropriate. *Gutowski*, 644 F. Supp. 3d at 141 (concluding that even without evidence of culpable conduct, the factor's neutrality and the weight "of the other factors favoring default judgment, would not prevent the court from exercising discretion . . . and entering a default judgment . . .."); *Salamander Stucco,* 2022 WL 2240036, at *4 (concluding that the totality of the circumstances warranted a default judgment despite the third factor weighing against it).

## I.    CONCLUSION

The Court finds that Westport has sufficiently established that it is entitled to declaratory relief against McGogney and that the *Chamberlain* factors support an entry of default judgment

given the continued prejudice to Westport from McGogney's failure to respond in any way to the Complaint or to this Motion. Accordingly, the motion for default judgment is granted.

A separate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge